Filed 1/4/22  P. v. Wallace CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092426 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F02739) |
| v. | |
| JILES LEE WALLACE, | |
| Defendant and Appellant. | |

In 1997, the trial court found defendant Jiles Lee Wallace guilty of first degree felony murder (Pen. Code, § 187, subd. (a))[1] with two special circumstance enhancements that the murder occurred during an attempted robbery and burglary (§ 190.2, subd. (a)(17)) for which defendant received a sentence of life without the possibility of parole.[2]  We upheld this judgment in an unpublished decision issued December 21, 1998.  (*Wallace, supra*, C027310.)

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Defendant was also convicted of burglary, attempted robbery, and the trial court found true another sentencing enhancement that defendant had used a firearm in connection

1

Because of case developments associated with the sentencing of youthful offenders, defendant received a new sentencing hearing on January 27, 2016. At the conclusion of that hearing, the trial court sentenced defendant, in pertinent part, to 25 years to life for the murder.

Thereafter, on February 13, 2019, defendant petitioned the trial court for resentencing based upon changes to the felony-murder rule under recently enacted Senate Bill No. 1437 (Reg. Sess. 2017-2018) (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019) (Senate Bill 1437). Following the appointment of counsel and briefing, the trial court denied defendant's petition in a written order without a hearing. While finding defendant had made a prima facie showing of eligibility for relief, the court found defendant was a "major participant" who had "acted with reckless indifference to human life."

On appeal, defendant contends the trial court erred in conflating the procedures associated with section 1170.95, subdivisions (c) and (d), including engaging in impermissible factfinding. He reasons the trial court correctly determined he had made a prima facie showing entitling him to relief, but erred in determining he had acted with "reckless indifference to human life" precluding his eligibility for relief. While it appears that the trial court may have erred in how it reached its decision denying defendant's petition for resentencing, we concur with the People that a review of defendant's record of conviction establishes as a matter of law that he is ineligible for resentencing. Accordingly, we will affirm the trial court's order.

## I. BACKGROUND

A.    *The Underlying Conviction*

We take the facts from our 1998 unpublished opinion affirming defendant's convictions in *Wallace, supra*, C027310:

---

with the crime. (*People v. Wallace* (Dec. 21, 1998, C027310) [nonpub. opn.] (*Wallace*).) However, neither these convictions, nor defendant's sentence related to them, are relevant to this appeal.

Around 3:00 a.m. on November 16, 1994, Scott Lewis was awakened by armed intruders in his apartment and shot to death by one of them. Lewis shared the apartment with his sister Kowana, her six-month-old child, and her boyfriend Billy Stack (who was not there at the time).

Less than a week before the shooting, Larry Freeman had accused Stack of stealing a stereo out of Freeman's car. Shortly thereafter Stack was shot in the leg by an acquaintance of Freeman's, while Freeman was present.

Albert Rhine, who earlier entered a negotiated guilty plea to voluntary manslaughter stemming from Lewis's death, testified about his involvement in the incident. Rhine stated that on the evening of the murder, he was with Freeman and Chris Dupree. Freeman had talked about Stack threatening Freeman's mother, in retaliation for being shot in the leg. Rhine, Freeman, and Dupree set out to pick up defendant at his apartment. On the way to defendant's apartment, Freeman stated he wanted Stack "taken care of"; Dupree replied that he would handle it.

At defendant's apartment, with Shawn Shorter present, Freeman told defendant that someone "was messing with his mom" and that he "wanted to go over and do something about it." Freeman and defendant went into a bedroom and returned with three handguns; the guns were inspected by all. Freeman also said that he had a safe stored at Stack's apartment, which contained drugs and maybe some money. If the others backed Freeman up, he said, they could have the contents of the safe.

Borrowing two cars (so Freeman's car could not be traced), the five men arrived at Stack and Lewis's apartment. Freeman stayed downstairs and instructed the others (defendant, Dupree, Rhine, and Shorter) to let Dupree handle things. While walking up to the apartment, defendant stated that if he was going in, he was going to get something out of it, like a TV or VCR. Defendant, Dupree, and Shorter were each armed with one of the handguns from defendant's apartment.

3

When the four men barged into the apartment, Lewis was on the couch. Defendant, with a mask over his head and the gun in his hand, told Lewis to get down and everything would be all right. Defendant and Rhine then went into Kowana's bedroom to look for the safe, while Shorter and Dupree, who had been behind defendant and Rhine, stayed with Lewis with guns drawn. While defendant and Rhine were "tearing the place up" looking for the safe in another bedroom, they heard three shots. All the intruders ran from the apartment; Lewis reached for Rhine, but defendant grabbed Rhine's shoulder and said let's go.

When they reached the cars, Freeman yelled at Dupree for shooting Lewis. Dupree later explained that was the way people did it in Louisiana.

An eyewitness saw the two borrowed cars at the scene, saw three black males and one white male go into Lewis's apartment complex, heard shots fired, and saw the four men return to the cars, one of whom was tentatively identified as defendant.

On January 28, 1997, the court determined defendant was guilty of first degree murder (§ 187, subd. (a)) and found true the enhancement allegations that defendant had used a gun (§ 12022.5, subd. (a)) and that the murder was committed while engaged in burglary and attempted robbery (§ 190.2, subd. (a)(17)). The court also found defendant guilty of attempted robbery (§§ 664/211) and burglary (§ 459) and found true the allegations that he had used a gun during the commission of these crimes (§ 12022.5, subd. (a)). We affirmed this judgment on appeal. (*Wallace, supra*, C027310.) While defendant successfully petitioned for a new sentence that included the possibility of parole, the substance of his underlying convictions and related enhancements did not change.

B.     *The Section 1170.95 Resentencing Proceedings*

On February 13, 2019, defendant filed a section 1170.95 petition for resentencing based upon changes to the felony-murder rule brought about by Senate Bill 1437 and requesting the appointment of counsel. This petition averred in pertinent part that

4

defendant had been convicted of first degree murder under a felony-murder theory, but that he could not now be convicted of murder because of changes to sections 188 and 189. Pertinent to defendant's issues on appeal, the defendant also averred that he "was not a major participant in the felony or [that he] did not act with reckless indifference to human life during the course of the crime or felony." The court appointed counsel and briefing ensued. The People's opposition included in pertinent part that the true finding on the section 190.2 subdivision (a)(17) enhancements precluded defendant's ability to show that he was eligible for relief. In response, defendant argued the court should grant his petition given his youth at the time of the murder, the older age of his codefendants, and that other factors concerning his upbringing, etc., supported relief.

Thereafter, on May 1, 2020, the trial court denied defendant's petition in a written order without a hearing. While finding defendant had made a prima facie showing of eligibility for relief, the court found defendant was a "major participant" who had "acted with reckless indifference to human life." Instead of highlighting the true finding on the enhancement allegations to make this determination, the court relied on information from defendant's record of conviction:

"1. The Defendant proceeded to trial, waiving his right to a jury trial. In sentencing the Defendant, the sentencing judge stated 'There was evidence provided that Mr. Wallace was actively involved in getting the weapon that was used in this and he was very active in the 211 against the -going into the apartment and trying to find the safe' (RT 3-5: 26-36:3)[;]

"2. The four males who entered the apartment did so to 'teach the male a lesson' (RT 36:4) as well as to commit a robbery[;]

"3. The Defendant was one of the first young males to enter the apartment while wearing a mask, pointed a gun at the victim and told him to get to the ground. (Dec 18, 2014 Probation report P.2)[;]

5

"4. The Trial Judge made a factual finding the Defendant 'was not what I would consider a passive participant [or] had a minor role in this, because of the fact that [he] was the one that was actively involved in helping get the weapon and the fact that he was very active in going into the apartment and setting the whole situation up that resulted in the killing' (RT []:10-16)."

The court's order continued: "Petitioner has requested this Court to take into consideration his youth and potential duress defense. Having done so, [t]his court still finds the Petitioner to have been a major participant who acted with reckless indifference to human life as defined in CALCRIM 703. [¶] It is ordered that Petitioner Jiles Lee Wallace's . . . Section 1170.95 Petition for vacating of his first degree murder conviction in Case No. 95F02739 is Denied."

Defendant timely appealed.

## II. DISCUSSION

### A. *Legal Background*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844.) Relevant to felony murder, Senate Bill 1437 added section 189, subdivision (e) to now provide that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

6

Senate Bill 1437 further added a provision providing a direct avenue for defendants previously convicted of felony murder to seek relief: section 1170.95. (*People v. Gentile, supra*, 10 Cal.5th at pp. 843, 847.) "Under section 1170.95, a defendant may petition to have his or her conviction vacated when, among other conditions, the following apply: 'The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder' (§ 1170.95, subd. (a)(2)), and '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019' (§ 1170.95, subd. (a)(3))." (*Id.* at p. 847.)

Section 1170.95, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962.) First, the trial court determines whether the petition is facially sufficient under section 1170.95, subdivision (b). (*Lewis, supra*, at p. 960.) If the petition is facially sufficient, then, the trial court moves on to subdivision (c), appointing counsel (if requested) and following the briefing schedule set out in the statute. (*Lewis, supra*, at p. 966.) Following the completion of this briefing, the trial court then determines whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Ibid.*)

As the Supreme Court recently explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]

'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis, supra*, 11 Cal.5th at p. 971.)

B.    *Application*

Here, the trial court determined defendant had stated a prima facie showing of eligibility (§ 1170.95, subd. (b)) but went on to find defendant was a "major participant" who had "acted with reckless indifference to human life."  Defendant argues this was impermissible factfinding at a section 1170.95, subdivision (c) stage.  Whether the trial court actually engaged in factfinding is ambiguous on this record.  The People had argued defendant was ineligible for relief by virtue of the showing necessary to find the section 190.2, subdivision (a)(17) enhancements true.  Nonetheless, while the court's ruling referenced the jury instruction on those enhancements, the court did not highlight the true findings for those enhancements when determining defendant was a major participant who had acted with reckless indifference to human life.  Rather, the court noted various statements contained within the record that would support such a factual finding.

We concur with the People that the trial court's decision must be upheld because a review of defendant's record of conviction establishes as a matter of law that defendant is ineligible for resentencing.  (See *People v. Smithey* (1999) 20 Cal.4th 936, 972 [" ' " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.  If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion' " ' "].)

Following defendant's court trial, on January 28, 1997, the court found defendant guilty of first degree murder (§ 187, subd. (a)) and found true the enhancement allegations that defendant had used a gun (§ 12022.5, subd. (a)) and that the murder was committed while engaged in burglary and attempted robbery (§ 190.2, subd. (a)(17)).  In

8

order to find the section 190.2, subdivision (a)(17) enhancements true, the trial court necessarily determined that defendant was a major participant and that defendant acted with reckless indifference to human life. (CALCRIM No. 703.) Thus, these special circumstance findings render defendant ineligible for relief. (See, e.g., *People v. Allison* (2020) 55 Cal.App.5th 449, 457-458 (*Allison*) [the defendant's admission of felony-murder special circumstance rendered him ineligible for relief under § 1170.95]; *People v. Nunez* (2020) 57 Cal.App.5th 78, 90-91, review granted Jan. 13, 2021, S265918 [the defendant's kidnapping special circumstance rendered him ineligible for relief under § 1170.95 because the jury necessarily found the defendant participated in the kidnapping with the intent to kill the victim, or that the defendant was a major participant in the underlying felony].)

Defendant argues he should be entitled to proceed with his section 1170.95 petition notwithstanding the felony-murder special circumstance because subsequent developments in the law have placed the continuing validity of those findings into question for purposes of the section 1170.95 inquiry. The Attorney General disagrees.

Whether a true felony-murder special circumstance finding under section 190.2, subdivision (a)(17) should preclude a defendant from making a prima facie showing of entitlement to relief if that finding predated the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 is an issue that has been the subject of great debate and is presently pending before the California Supreme Court. (See *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606.) Until we receive further guidance from the California Supreme Court, we find *Galvan* and *Allison* more persuasive on this issue than the cases to the contrary. (Compare *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284 (*Galvan*); *Allison, supra*, 55 Cal.App.5th 449 [enhancement disqualifying responding to *York*]; *People v. Jones* (2020) 56 Cal.App.5th 474, review granted Jan. 27, 2021, S265854 [following *Allison*]; *People v. Nunez, supra*,

9

57 Cal.App.5th 78 [following *Allison*], review granted; *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S264978; *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033, with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85 [enhancement not disqualifying], review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250 [following *Torres* and criticizing *Galvan*], review granted Nov. 18, 2020, S264954.)

In light of this, we do not accept defendant's attempts to impugn the preclusive effect of those findings. As explained in *Allison*, "Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*. The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison, supra*, 55 Cal.App.5th at p. 461.)

Because the true findings on the section 190.2, subdivision (a)(17) enhancements preclude defendant from showing that he could not now be convicted of first degree felony murder following the changes brought about by Senate Bill 1437, the trial court did not error in determining he was ineligible for relief.

### III. DISPOSITION

The trial court's order denying defendant's petition for resentencing under section 1170.95 is affirmed. Should defendant successfully challenge the section 190.2, subdivision (a)(17) findings via habeas corpus, nothing in this decision precludes defendant from again seeking relief under section 1170.95.

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KRAUSE, J.